IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| REGINALD ARTHUR JENNINGS | * |
| Petitioner | * |
| v. | * |
| | CIVIL ACTION NO. ELH-11-715 |
| | * |
| THE ATTORNEY GENERAL OF THE STATE OF MARYLAND, | * |
| Respondent | * |

\*\*\*\*\*\*

**MEMORANDUM**

Reginald Arthur Jennings, who is self-represented, filed a petition for habeas corpus on March 17, 2011, pursuant to 28 U.S.C. § 2241, alleging that he was improperly committed to Spring Grove Hospital Center ("Spring Grove"). ECF 1. He also complained that he had been forcibly medicated. *Id*. The Attorney General moved to dismiss the complaint, ECF 8, and appended several exhibits to its motion. On September 28, 2011, the Court entered a Memorandum and Order denying the petition for writ of habeas corpus as to petitioner's involuntary commitment and directing respondent, the Attorney General of the State of Maryland, to answer petitioner's claim regarding forced medication. ECF 14 & 17. The Attorney General responded by filing a motion for summary judgment, which is unopposed.[1] ECF 25.[2] Respondent characterizes the issue of forced medication as a claim founded on 42 U.S.C. § 1983. *See* ECF 25-1.

---

[1] Plaintiff was given the requisite notice and an opportunity to oppose the dispositive motion, in compliance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and has failed to do so. *See* ECF 26, 27, 28 and docket entry of February 27, 2012.

[2] The Attorney General also submitted a supporting legal memorandum and several

Upon review of the papers filed, the court finds an oral hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011). The Motion shall be granted.

**I.     BACKGROUND**

On November 12, 2010, Jennings was admitted to Spring Grove for a court ordered competency evaluation in connection with a charge of assault. ECF 25-2, Exh. A, Affidavit of Dr. Abner Pasatiempo, at ¶ 6 (hereinafter, "Ex. A"). On January 6, 2011, Jennings was committed to the Maryland Department of Health and Mental Hygiene ("DHMH") after being found incompetent to stand trial in accordance with Md. Code, Crim. Pro. Article, § 3-106(b). ECF 8, Ex. 4 & ECF 25, Ex. B. Jennings was released from Spring Grove on July 7, 2011, and transferred to the Baltimore City Detention Center, where he became acutely psychotic, resulting in his readmission to Spring Grove on September 1, 2011. ECF 25-2, Ex. A ¶ 8.

Jennings, who has suffered with mental illness for over thirty years, has been diagnosed with bipolar disorder with psychotic features (delusions and paranoia), and has about ten previous psychiatric hospitalizations. Ex. A ¶ 9. The delusions worsen when he fails to take medication. Without medication, Jennings becomes extremely agitated, threatening, and hypersexual. He lacks insight into his illness and has poor judgment, which are impediments to his treatment.

From December 2010 through January 2011, Jennings refused all psychiatric medication. He became agitated and threatened others. Dr. Pasatiempo, a staff psychiatrist at Spring Grove, was Jennings' treating psychiatrist from December 7, 2010 to July 7, 2011. Ex. A ¶ 2. Dr. Pasatiempo, who is certified by the American Board of Psychiatry and Neurology, *id.*, requested the convening of a Clinical Review Panel ("CRP"), to determine whether Jennings could forcibly be administered

---

exhibits.

psychotropic medication, in accordance with Md. Code, Health Gen. Art., § 10-708. *Id*. ¶¶ 11, 12. Dr. Pasatiempo explained to Jennings why he believed a CRP was necessary, as well as the risks and benefits of the proposed medications. *Id*. ¶ 12.

Jennings and his Patient Right's Advisor at Spring Grove, Everly Smith, were provided notice of the CRP four days prior to the meeting. *Id*. ¶ 13; ECF 25-2, Ex. C. Both Jennings and Smith attended the CRP. Ex. A, ¶ 16. At the hearing, Dr. Pasatiempo advised the CRP that Jennings suffers from bipolar disorder with psychotic features and explained the symptoms that cause Jennings to be a danger to himself and others. *Id*. ¶ 15. Further, he advised the panel that Jennings would benefit from antipsychotic medication and mood stabilizers, but that Jennings had refused to take the offered medication. *Id*.

The panel spoke with Jennings about his refusal to take the medication and reviewed the consequences of withholding the medication, as well as the consequences of requiring Jennings to take the medication. The CRP endeavored to come to a consensus with Jennings and Pasatiempo for an appropriate treatment plan. Jennings was provided an opportunity to ask questions and present witnesses. *Id*. ¶ 16.

The CRP found that Jennings suffers from Bipolar I Disorder with psychotic features and that the medication was prescribed to treat his mental disorder. *Id*. ¶ 17. In its view, administering the medication represented a reasonable exercise of professional judgment and, if Jennings were not forcibly medicated, "he would remain seriously mentally ill with no significant relief of the mental illness symptoms that cause him to be a danger to himself and others. . . ." *Id*. The CRP further found that, without medication, Jennings "would remain seriously mentally ill for a significantly longer period of time with mental health symptoms that cause him to be a danger to himself or others." *Id*. Accordingly, the CRP approved the use of antipsychotic medication, mood stabilizing

medication, and anti-anxiety/anti-agitation medication. *Id*. ¶ 18; ECF 25-2, Ex. D.

Jennings appealed the CRP's decision. *Id*. ¶ 19; ECF 25-2, Ex. E. The Administrative Law Judge ("ALJ") heard Jennings' appeal on February 3, 2011. Ex. A, ¶ 20. On appeal to the ALJ, Jennings was represented by Terri Mason, Esquire. *Id.* The ALJ affirmed the CRP's decision. *Id.* ¶ 21. Jennings did not appeal the ALJ's decision. *Id.* ¶ 23.

During the appeal process, Jennings was not forcibly medicated. *Id*. ¶ 19. After the ALJ's decision was issued, however, Jennings was medicated. *Id*. ¶ 21. Notably, Jennings' psychotic symptoms and agitation decreased as a result of the administration of the medication. *Id.* ¶ 22.

**Standard of Review**

Summary Judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.,* 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her

favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Discussion

The respondent urges the Court to grant his summary judgment motion for two reasons: 1) The Attorney General lacked actual or constructive knowledge that Mr. Jennings was medicated against his will; and, alternatively, 2) the forced medication satisfied both procedural and substantive due process. ECF 25-1, at 1.

A.  Supervisory Liability

In the context of this case, Section 1983 liability on the part of a supervisor requires a showing that: (1) the supervisory defendant failed promptly to provide an inmate with needed medical care; (2) the supervisory defendant deliberately interfered with the prison doctors' performance; or (3) the supervisory defendant tacitly authorized or was indifferent to the prison physicians' constitutional violations. *See Miltier v. Beorn*, 896 F. 2d 848, 854 (4th Cir. 1990); *see also Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984).

In his complaint, Jennings makes no specific allegations against the Maryland Attorney General, Douglas Gansler. Rather, it appears that Jennings seeks to hold the Attorney General responsible due solely to his supervisory role. This is the very essence of the doctrine of respondeat superior, which has no place in § 1983 litigation. *See Carter v. Morris,* 164 F.3d 215, 221 (4th Cir. 1999) (to establish § 1983 liability, plaintiff must show that the defendant had actual or constructive

knowledge of a risk of constitutional injury, deliberate indifference to the risk, and a causal link between the defendant's conduct and the plaintiff's constitutional injury).

B.   Due Process

The core question before the Court is whether Jennings' due process rights were violated as a result of his having been forcibly medicated.  An involuntarily confined patient in a state mental health facility has a due process right to be free from unreasonable restraint and the right to be housed in safe conditions, but such rights are tempered by the treatment concerns of mental health professionals.  *See Youngberg v. Romeo*, 457 U.S. 307, 322-23 (1982).  Forcible administration of antipsychotic medication is a significant intrusion, and gives rise to a protected liberty interest.  *See Johnson v. Silvers*, 742 F. 2d 823, 825 (4th Cir. 1984).   Thus, an inmate has a "significant liberty interest in avoiding the unwanted administration of antipsychotic drugs." *Washington v. Harper*, 494 U.S. 210, 221-22 (1990) (finding state law authorizing involuntary treatment of inmate constitutionally permissible); *see also Sell v. United States*, 539 U.S. 166, 177 (2003)(extending *Harper* to persons confined because they are incompetent to stand trial and permitting forced medication in order to render a defendant competent to stand trial).

Decisions made by professionals concerning the treatment of involuntarily confined patients are presumptively valid, and should not be second-guessed by the court.  *Youngberg,* 457 U.S. at 322.  Nonetheless, a due process violation will be found if the treating professionals substantially departed from the exercise of accepted professional judgment.  *See Patten v. Nichols*, 274 F.3d 829, 842 (4th Cir. 2001).  But, neither malpractice nor a difference of opinion among experts as to the proper treatment of a patient will support a finding that due process was violated. *Id*. at 845; *see also Kulak v. City of New York*, 88 F.3d 63, 75 (2d Cir. 1996).

The *Harper* Court held that forcible medication of a prison inmate requires balancing the

state's penological interests and the inmate's retained liberty interest and that forcible medication is permitted if the inmate is dangerous to himself or others and treatment is in the inmate's medical interest. *Washington v. Harper*, 494 U.S at 223.  Such forcible medication, however, requires certain procedural safeguards, including at least 24 hours notice prior to the hearing—such notice to include the inmate's diagnosis and the basis for the physician's belief that medication was necessary; the inmate's presence at the hearing; the opportunity to present witnesses; the opportunity to cross-examine witnesses; and the right to receive guidance from a lay advisor. *Id*. at 231.

In Jennings' case, the actions and decisions of the CRP readily satisfied substantive and procedural due process. Jennings has a long history of serious mental illness, yet he refused to take the necessary medication for his conditions. As a result, he experienced a deterioration of his mental health, and was a danger to himself and others. The need for Jennings to take his prescribed medication was discussed with him, and the authority of the CRP was explained. He was provided advance notice of the hearing, as well as representation at the hearing and during his appeal. He was also permitted to call witnesses and ask questions during the hearing. Dr. Pasatiempo and the CRP reasonably believed Jennings demonstrated a threat of harm to himself and to others, as evidenced by his assaultive conduct and psychotic episodes. The forced medication was deemed to be in Jennings' medical best interest. The decision to medicate Jennings forcibly constituted a reasonable exercise of professional judgment and complied with applicable Maryland laws and policies.[3]

Nothing in the conduct of Dr. Pasatiempo or the CPR suggests that the decision to forcibly medicate Jennings constituted "such a substantial departure from accepted professional judgment

---

3 For a discussion of Maryland's procedures as to forced medication, *see, e.g.*, *Beeman v. Dep't of Health and Mental Hygiene*, 107 Md. App. 122 (1995); *Beeman v. Dep't of Health & Mental Hygiene,* 105 Md. App. 147 (1995).

practice or standards so as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Youngberg*, 457 U.S. at 323. Moreover, "[n]egligently inflicted harm [is] categorically beneath the threshold of constitutional due process." *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998).

## III.   CONCLUSION

Defendant's motion for summary judgment shall be granted. A separate Order follows.

.
Dated this 30th day of March, 2012.

/s/
Ellen Lipton Hollander
United States District Judge
